(7 Misc. Rep. 282.)

## LAZARUS v. SANDS.

(City Court of Brooklyn, General Term.  February 26, 1894.)

FACTORS AND BROKERS—EMPLOYMENT.

In an action for the violation of defendant's duty to plaintiff as broker it appeared that defendant informed plaintiff that he had certain lots on his books, and offered them for $17.500.  The lots had been placed in defendant's hands by E., another broker, with whom they had been placed by the owner, and the price asked by defendant was that fixed by the owner.  Plaintiff refused to buy at that price, and offered $13,000.  Defendant reported the bid to E., who was informed by the owner that he could have the lots at $12,000, without commissions.  E. then instructed defendant to offer the lots to plaintiff for $14,000. which offer plaintiff accepted.  Defendant then procured a contract, and reported that he had bought the property for plaintiff.  *Held*, that the evidence did not show that defendant was employed by plaintiff, so as to make him liable for the difference between the price at which the owner was willing to sell and the price asked.

Appeal from trial term.

Action by Edward R. Lazarus against Charles J. Sands to recover damages for violation of defendant's duty to plaintiff as a real-estate broker in selling plaintiff's real estate.  From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.  Reversed.

Argued before CLEMENT, C. J., and VAN WYCK and OSBORNE, JJ.

A. Simis, for appellant.

Chas. F. Brandt, for respondent.

VAN WYCK, J.  The plaintiff alleges in his complaint that he employed defendant, as his broker and agent, to negotiate for him a purchase of lots in Flatbush, and that, in violation of the good faith devolved upon defendant as such broker and agent, he fraudulently, to his own advantage, induced plaintiff to purchase the same for $14,000, whereas defendant could have secured them for $12,000, and plaintiff demands damages therefor.  The case was sent to the jury who gave plaintiff a verdict for $2,170.  This is an appeal from the judgment entered thereupon, and the order denying the usual motion for a new trial.

The question whether there was sufficient evidence to make out a prima facie case that plaintiff employed defendant, as his broker and agent, to negotiate for the purchase of these lots, was duly raised by the motion for nonsuit, to the denial of which the defendant duly excepted.  This requires a careful and critical examination of the evidence.  The testimony of the plaintiff, his wife, the defendant, Woods, and Egerton fairly shows that Woods, being the owner of these lots in and prior to November, 1891, placed them, in the early part of that month, in the hands of Egerton, a real-estate broker, to sell for him at the price of $17,500 for the plot; that Egerton shortly afterwards put them in the hands of defendant, Sands, another real-estate broker, to sell at the same

figure, (which seems to be a somewhat common practice with real-estate brokers,) and that Sands placed them on his books of properties that he had for sale; that shortly thereafter Mrs. Lazarus, the plaintiff's wife, called at Sand's real-estate office in relation to two other lots in Flatbush·which she or her husband had previously bought from some one else for $1,600, when, according to her testimony, he told her that he had on his books these lots, which he could sell her or her husband cheaper than $400 per lot, and she, according to her husband's testimony, informed him that Sands offered to sell her these lots very reasonably; that Sands and plaintiff then met, and went together to examine the property, and the former offered them to the latter for $250 a lot,—$17,500 for the plot of seventy lots,—assuring him that there could be realized a profit of $5,000 by the following spring; that plaintiff promptly refused to buy at that price, but made him a bid of $13,000, which Sands reported to Egerton, who saw Woods on November 30th, when the latter informed Egerton that he had just offered these lots to a New York broker for $12,000 net, and would do the same with Egerton, but without commission, and that Egerton must look out for himself, or could have all above that amount for his trouble; that Egerton then instructed Sands, in response to the bid of $13,-000 submitted, to offer the lots for $14,000; that Sands then reported to plaintiff that his offer of $13,000 was refused, but that, if he would make a bid of $14,000, he could buy them for him; that plaintiff increased his bid to that sum, and in about three hours Sands returned and said to plaintiff "he had bought the property for" him, (Lazarus,) who at once, on that day, December 1, 1891, signed a contract of purchase for $14,000 from one Woodruff, to whom Woods on that day had made a contract of sale for $12,000. In the contract signed by plaintiff it is expressly stated that it is understood that Sands is the broker of the vendor and must look to him for payment for his services. Woods did not know Sands in the transaction. Plaintiff's wife finally received title to the lots, which she still holds.

The foregoing statement covers substantially all the evidence bearing upon the question of the employment of Sands. We do not think the expression of Sands, that "he had bought the property for" him, when he reported to plaintiff that his bid of $14,-000 had been accepted, was sufficient to carry to the jury the question of the employment of Sands by plaintiff, in view of the circumstances that plaintiff and his wife knew Sands was a real-estate broker, and were told by him, in the very inception of the negotiations, that he, as such real-estate broker, had these lots, belonging to another, on his books for sale, and would sell the lots to them cheaper than they had bought previously two adjoining lots, and in face of the recital, in the written contract of purchase, that it was understood by plaintiff that Sands was the broker of the vendor, by whom he was to be paid. Any bad faith which is or can be shown on the part of Egerton to his principal, Woods, does not tend to make Sands the broker or employe of plain-

tiff.  Believing that a nonsuit should have been granted, it is un-necessary to consider the other exceptions.

Judgment and order must be reversed, and a new trial grant-ed, with costs to appellant to abide the event.  All concur.